UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| MORNING SONG BIRD FOOD LITIGATION ) | |
| Jeff Medley, ) | |
| Subpoenant. ) | No. 1:17-mc-00078-JMS-TAB |
| ) | |
| Glenn Hegewald, ) | |
| Subpoenant. ) | No. 1:18-mc-00016-JMS-TAB |
| ) | |

**<u>ORDER</u>**

In February 2012, Scotts Miracle-Gro Company ("<u>Scotts</u>") pleaded guilty to one count of pesticide misuse in the Southern District of Ohio. *See In re Morning Song Bird Food Litig.*, 831 F.3d 765, 769 (6th Cir. 2016) (summarizing criminal proceedings). As part of its guilty plea, Scotts admitted that it had used unapproved pesticides in producing its bird feed products, including a pesticide labeled "toxic to birds and other wildlife." Information at 4, *United States v. The Scotts Miracle-Gro Co.*, 2:12-cr-00024-JLG (S.D. Ohio Jan. 25, 2012). A class action lawsuit followed in June 2012 in the Southern District of California, alleging violations of federal racketeering laws and a variety of state consumer protection statutes for selling the tainted bird feed. *See In re Morning Song*, 320 F.R.D. 540, 543-44 (S.D. Cal. 2017) (summarizing claims and certifying class).

Discovery disputes stemming from the class action have proliferated in district courts throughout the country. *See, e.g.*, *In re Morning Song*, 2017 WL 7512980 (S.D. Fla. 2017); *In re Morning Song*, 2017 WL 7512980 (S.D. Ohio 2017); Order, *In re Morning Song*, No. 2:17-mc-230-PMD (D.S.C. July 26, 2017). Two such disputes now pend before this Court. In two miscellaneous matters, Plaintiffs from the Southern District of California matter move to compel

two deponents residing in this District to answer certain questions about their deposition preparation. Alternatively, Plaintiffs request that the Court transfer the two motions to the Southern District of California where the underlying litigation remains pending. The two deponents, Jeff Medley in cause number 1:17-mc-00078-JMS-TAB and Glenn Hegewald in cause number 1:18-mc-00016-JMS-TAB, were at the center of the pesticide issue and were two of the three employees terminated by Scotts for their actions. Plaintiffs' motions are fully briefed, as is Plaintiffs' objection to the Magistrate Judge's Report and Recommendation ("R&R") in Mr. Medley's matter. For the reasons set forth below, the Court **SUSTAINS** Plaintiffs' objection in Mr. Medley's matter and **GRANTS IN PART** Plaintiffs' motions to the extent that it **TRANSFERS** them to the Southern District of California for further proceedings.

## I.
### LEGAL STANDARDS

Federal Rule of Civil Procedure 45(c) limits the power of a subpoena to command a nonparty to attend a deposition to a location "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Rule 37(a), in turn, requires that motions to compel discovery from such a nonparty be filed not in the court where the underlying action is taken, but "in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(2). Plaintiffs seek to transfer these matters from this district to the Southern District of California, where the underlying action pends, pursuant to Rule 45(f). Where, as here, the subpoenants do not consent to such a transfer, the Court may nonetheless transfer the motions upon finding "exceptional circumstances." Fed. R. Civ. P. 45(f).

While the Court ultimately concludes that transfer is appropriate for reasons elaborated upon below, some orientation to the scope of discovery under the Federal Rules of Civil Procedure is helpful to understanding the posture of the pending motions. Rule 37 permits a party to move

the Court to compel production of documents if the party's request comports with the scope of discovery. Fed. R. Civ. P. 37(a)(3)(B)(iv). The scope of discovery is broad, with a "strong public policy in favor of disclosure of relevant materials." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). But it is limited from the outset to relevant, "nonprivileged matter" and to requests which are "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Evidentiary privileges, such as the work-product and attorney-client privileges claimed in response to these motions, are narrowly construed because they withhold relevant information from the trier of fact. *See, e.g.*, *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). The attorney-client privilege, designed to encourage open and honest communication between attorneys and clients, protects "communications made in confidence by a client and client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). Work-product privilege is "intended to prevent a litigant from taking a free ride on the research and thinking of his [or her] opponent's lawyer and to avoid the resulting deterrent to a lawyer's committing his [or her] thoughts to paper." *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999). Although outside the ambit of the codified doctrine in Rule 26(b)(3)(A), the common law work product privilege extends to protect intangible work product, including the "thoughts and recollections of counsel." Charles Alan Wright et al., 8 Federal Practice & Procedure § 2024 (3d ed. 2010) (collecting authorities).

The proportionality requirement of Rule 26(b) requires courts to account for a variety of considerations, including "the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Patterson*, 281 F.3d at 681. The

burden rests on the party resisting discovery to establish the undue burden of the discovery sought and any claims of privilege as to each portion of withheld testimony. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) ("The party seeking to invoke the privilege bears the burden of proving all of its essential elements."); *United States ex rel. Robinson v. Ind. Univ. Health Inc.*, 2015 WL 3961221, at *5 (S.D. Ind. 2015) ("A party resisting discovery on the basis of undue burden must show with specificity that the discovery requests are issue are objectionable.") (collecting cases). While nonparty status is a "significant factor" in the proportionality analysis, nonparties still must demonstrate "significant expense" before receiving protection from discovery. *Keaton v. Hannum*, 2013 WL 4481889, at *1 (S.D. Ind. 2013). And protection against undue burden may take many forms short of a prohibition on additional discovery. *E.g.*, Fed. R. Civ. P. 26(c)(1) (detailing several options at court's disposal "to protect a party or person from . . . undue burden or expense").

"District courts have broad discretion in discovery matters," *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001), and this discretion extends to decisions to transfer a discovery motion under Rule 45(f), *see, e.g.*, *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998) (noting that the Federal Rules of Civil Procedure vest district courts with the discretion to "manage the discovery process to facilitate prompt and efficient resolution of the lawsuit"); *cf., e.g.*, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (emphasizing district court's discretion to consider totality of the circumstances for transfers of civil cases under § 1404(a)); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010) (same). The Court may consider all reasonable evidence in considering a discovery motion without regard to the "formalities" of evidentiary rules. *Nat'l Util. Serv., Inc. v. Nw. Steel & Wire Co.*, 426 F.2d 222, 225 (7th Cir. 1970).

4

# II.
## BACKGROUND

These two discovery disputes stem from the class action captioned *In re Morning Song Bird Food Litigation*, No. 3:12-cv-1592-JAH-AGS (S.D. Cal. filed June 27, 2012), presently pending in the Southern District of California. As briefly explained above, in 2012, Scotts pleaded guilty to using unapproved, harmful pesticides on its bird feed. *See In re Morning Song*, 831 F.3d at 769 (summarizing criminal proceedings). The class action is comprised of consumers who purchased the tainted bird feed and seeks damages under RICO and various state consumer protection statutes.

Discovery has taken the parties all over the country, including to the Southern District of Indiana. In the matters before the Court, Plaintiffs have taken the depositions of two former Scotts employees who were terminated for their roles in the pesticide misuse. Mr. Medley was Regional Operations Director of Wild Bird Food for Scotts until he was terminated in 2008. [Medley Filing No. 3-1 at 106.] Mr. Hegewald was a plant engineer for Scotts. [Hegewald Filing No. 5-1 at 126.] Mr. Medley and Mr. Hegewald were two of three individuals terminated by Scotts as a result of the pesticide misuse. [Hegewald Filing No. 5-1 at 125-26.] At the sentencing hearing in Scotts' criminal matter, Scotts emphasized that the pesticide misuse "did not reflect some broader failure of corporate culture or corporate compliance." Sentencing Hearing Transcript at 9, *Scotts Miracle-Gro Co.*, 2:12-cr-00024-JLG (S.D. Ohio Sept. 17, 2012). The sentencing judge found it significant that "the three individuals who were most responsible for the bird food violation," two of whom are the deponents in these matters, "were terminated by Scotts." *Id.* at 20.

The current disputes share nearly identical underpinnings. Sometime prior to each deposition, attorney Doug Mansfield, who at one point represented Scotts, [Hegewald Filing No. 5-1 at 131], contacted each deponent to offer his services, [Hegewald Filing No. 5-1 at 108; Medley

Filing No. 3-1 at 92]. Neither deponent paid for Mr. Mansfield's representation. [Hegewald Filing No. 5-1 at 108; Medley Filing No. 3-1 at 92.] Mr. Hegewald confirmed that Scotts paid for Mr. Mansfield to represent him at his deposition. [Hegewald Filing No. 5-1 at 103.] Mr. Mansfield was also paid by Scotts to represent the third individual fired for his actions in the pesticide matter, Joseph Pellegrini. [Hegewald Filing No. 5-1 at 131.]

Prior to their depositions, Mr. Medley and Mr. Hegewald met not only with their attorney, Mr. Mansfield, but also with counsel for Scotts. [Medley Filing No. 3-1 at 100; Hegewald Filing No. 5-1 at 108.] During the depositions, Plaintiffs' counsel sought to explore the nature and impact of the pretrial deposition meetings between the deponents and Scotts' counsel. Mr. Mansfield and Scotts' counsel objected once the questioning went beyond the mere fact of the discussion. At Mr. Medley's deposition, Scotts' counsel ("Mr. Jones" in the transcript) instructed Mr. Medley not to answer several questions regarding his deposition preparation:

```
BY MS. JENSEN:
Q    During your meeting in preparation for your
     deposition, did any of the Scotts attorneys
     summarize for you the testimony of any witness in
     this case?
     MR. JONES:  And we're going to let him answer
     without waiving our attorney-client privilege or
     work product privilege.
A    Yes.  There was some discussion about other
     testimony, yes.
BY MS. JENSEN:
```

```
Q    And what was that discussion?
     MR. MANSFIELD:  Objection.
     MR. JONES:  I'll instruct you not to answer.
     MS. JENSEN:  Okay.  So we'll let the Court
decide that one.
     MR. MANSFIELD:  Yes.
     MR. JONES:  Are you taking -- go ahead.
     MS. JENSEN:  We don't think it's privileged,
so that's our fundamental disagreement.
```

[Medley Filing No. 3-1 at 100-01.]

On cross-examination at Mr. Hegewald's deposition, Mr. Mansfield solicited the following testimony about Mr. Hegewald's deposition preparation:

```
BY MR. MANSFIELD:
Q    You were also asked earlier today about whether we
     had discussed other depositions.  Do you recall
     those questions?
A    Yes.
Q    Did any of your discussions have any effect
     whatsoever on your testimony today?
A    No.
```

[Hegewald Filing No. 5-1 at 105.]  Plaintiffs' counsel thereafter asserted that Scotts and/or Mr. Hegewald had waived any privilege by soliciting this testimony.  [Hegewald Filing No. 5-1 at 105-06.]

Later, on redirect, Mr. Hegewald's counsel instructed him not to answer certain questions regarding deposition preparation:

> Q    So you spent time yesterday with these attorneys for an hour and a half or two hours, and you spent time talking about the facts in the case, right?
>
> MR. JONES: Objection.
>
> MR. MANSFIELD: Objection. This is -- you're now getting into privileged matters.
>
> BY MS. JENSEN:
>
> Q    Sir, is it your testimony that nothing you discussed with your attorneys yesterday impacted your testimony today?
>
> MR. MANSFIELD: Note my objection. I'm going to instruct you not to answer on the grounds that that called for privileged communications between me and my client.
>
> BY MS. JENSEN:
>
> Q    Is it your testimony that nothing that you talked to these attorneys about for an hour and a half or two hours impacted what you remembered in your testimony today?
>
> MR. MANSFIELD: Note my objection; calls for privileged information. And I'm instructing you not to answer that.

[Hegewald Filing No. 5-1 at 109-10.]

At or after each deposition, Plaintiffs' counsel learned that the deponents, by counsel, had reached "common interest agreements" with counsel for Scotts. The emails discussing these agreements are identical, except for the difference in names:

> **Duffy, Marjorie P.**
>
> From: Douglas Mansfield <dmansfield@lmng-law.com>
> Sent: Thursday, August 17, 2017 7:57 PM
> To: Duffy, Marjorie P.
> Cc: Jones, Jeffrey J.; Swan, Jr., Edward Patrick
> Subject: Re: Scotts - Medley
>
> Yes, I agree on behalf of Mr. Medley. Thanks, Doug.
>
> --
> Douglas M. Mansfield
> LAPE MANSFIELD NAKASIAN & GIBSON, LLC
> 9980 Brewster Lane, Suite 150, Powell, OH 43065
> Phone: 614.763.2316 | Fax: 614.467.3704
> dmansfield@lmng-law.com | www.lmng-law.com
>
> ***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***
>
> On Aug 17, 2017, at 7:30 PM, Duffy, Marjorie P. <mpduffy@jonesday.com> wrote:
>
>> Doug,
>>
>> I am writing to confirm the common interest agreement we have reached in the representation of our respective clients. We have mutually concluded that the representation of our respective clients in the pending civil action raises issues of common interest and mutuality of legal interest in some issues for our respective clients, and that the sharing of certain documents, information, factual material, mental impressions, memoranda, client communications (whether oral or written), and other material (including materials and information shared for purposes of deposition preparation) will facilitate the rendering of professional legal services to our respective clients. Therefore we have agreed that such possible sharing of information relevant to the parties' legal interests with respect to the pending civil action shall not constitute or be construed as a waiver of any attorney-client privilege, attorney work product protection, or any other applicable privilege.
>>
>> Please let me know by reply that you agree on behalf of your client. Thank you.
>>
>> Marjorie P. Duffy
>> Partner
>> JONES DAY® - One Firm Worldwide℠<http://www.jonesday.com/>

[Medley Filing No. 17-3 at 2; Hegewald Filing No. 10-1 at 11.]

On October 24, 2017, Plaintiffs filed their motion to compel Mr. Medley to reconvene his deposition by video to answer the questions as to which Scotts' counsel invoked attorney-client privilege or, in the alternative, to transfer the miscellaneous matter to the Southern District of

California for decision. [Medley Filing No. 1.] On February 2, 2018, the Magistrate Judge issued his R&R, recommending that Plaintiffs' motion to compel be denied on its merits, though the Magistrate Judge did not reach the merits of the privilege claims. [Medley Filing No. 18.] On March 12, 2018, Plaintiffs filed their motion to compel Mr. Hegewald to reconvene his deposition by video to answer the questions as to which his counsel invoked attorney-client privilege or, in the alternative, to transfer the motion to the Southern District of California. [Hegewald Filing No. 1.] Both motions and Plaintiffs' objections to the R&R in Mr. Medley's matter are fully briefed and ripe for decision.

## III.
### DISCUSSION

The Court begins by addressing Plaintiffs' objections to the Magistrate Judge's R&R before turning to the threshold issue of whether this Court is in the best position to decide the merits of Plaintiffs' motions to compel.

### A. Plaintiffs' Objections to the R&R in Mr. Medley's Matter

On November 15, 2017, the undersigned referred Mr. Medley's matter to the assigned Magistrate Judge for a report and recommendation as to the proper disposition of Plaintiffs' motion. [Medley Filing No. 14.] On January 7, 2018, the Magistrate Judge issued his R&R, recommending that the undersigned deny Plaintiffs' Motion. [Medley Filing No. 18.] The Magistrate Judge cited several bases in support of his recommendation. First, the R&R concluded that Plaintiffs' motion was filed outside of the window provided for by the chambers rules of Magistrate Judge Schopler, who is assigned to the underlying class action in California. [Medley Filing No. 18 at 4.] Rather, the R&R surmised that Plaintiffs may have "filed their motion in this Court to avoid issues arising with their noncompliance" with Magistrate Judge Schopler's chambers rules. [Medley Filing No. 18 at 4.] Second, the R&R concluded that, to the extent this

Court's Local Rules apply, Plaintiffs failed to comply with them prior to filing their motion. [Medley Filing No. 18 at 4-5.] Third, the R&R concluded that reconvening the deposition would be unduly burdensome for Mr. Medley, given his status as a nonparty and the distance between this District and California.[1] [Medley Filing No. 18 at 5-8.] The R&R emphasized the expense while characterizing the sought testimony as "minutiae," and finding it not strongly relevant to the merits of the matter. [Medley Filing No. 18 at 7-8.] The R&R did not address the underlying assertions of attorney-client and work product privilege.

Plaintiffs object to each of these conclusions, arguing that neither Magistrate Judge Schopler's chambers rules nor the Southern District of Indiana Local Rules apply under these circumstances and that the R&R overemphasized any cost to Mr. Medley while improperly minimizing the importance of the discovery sought. [Medley Filing No. 19 at 5-11.] Mr. Medley and Scotts ("Nonmovants") filed a joint response to Plaintiffs' objections, arguing that Plaintiffs should have complied with Magistrate Judge Schopler's deadlines and the Local Rules of this Court. [Medley Filing No. 20 at 9-11.] The Nonmovants argue that the R&R appropriately determined that the burden of a reconvened deposition would outweigh its benefits. [Medley Filing No. 20 at 11-17.]

While the Court referred this matter to the Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), [Medley Filing No. 14], Plaintiffs submit that the more deferential clearly erroneous/contrary to law standard of review applicable to nondispositive orders applies to the Court's review of the R&R, [Medley Filing No. 19 at 8-9]. Under this standard, the district judge reviews the magistrate judge's R&R for incorrect

---

[1] The R&R also concluded that transfer would be inappropriate for the same reason. The Court addresses the issue of transfer in the next Section.

interpretations of "relevant statutes, case law, or procedure" and for "definite . . . mistake[s]" in the application of law to fact. *Elder Care Providers of Ind., Inc. v. Home Instead, Inc.*, 2017 WL 4250107, at *2 (S.D. Ind. 2017) (internal quotations omitted) (collecting authorities); *see* Fed. R. Civ. P. 72(a). The Nonmovants, meanwhile, invoke Rule 72(b), which provides for *de novo* review of a report and recommendation on dispositive matters. [Medley Filing No. 20 at 5.] Thus, the Court is in the unique position of having each party invoke the legal standard *detrimental* to their respective positions. Fortunately, while motions to compel are classically nondispositive matters subject to deferential review (notwithstanding the above-noted § 636(b)(1)(B) referral), this is not a situation in which the standard of review impacts the result. Under either standard, the Court concludes that the R&R's procedural rulings and conclusions on proportionality may not stand.

First, the Court rejects the R&R's suggestion that Plaintiffs filed their motion in this District as a means to circumvent Magistrate Judge Schopler's chambers rules on timing for discovery motions. Significantly, Federal Rule of Civil Procedure 37(a) required that Plaintiffs seek "an order to a nonparty . . . in the court where the discovery is . . . taken." Fed. R. Civ. P. 37(a)(1); *see also* Fed. R. Civ. P. 45(g) (noting contempt authority of "court for the district where compliance is required"). Plaintiffs filed their motion here as required by the rules, not as a means of forum shopping. Similarly, there is no reason that Magistrate Judge Schopler's chambers rules should apply to a miscellaneous matter pending in this Court, inasmuch as the Federal Rules expressly required this particular discovery dispute to be raised in this Court, which has its own Local Rules to govern proceedings before it. *Cf., e.g.*, Fed. R. Civ. P. 83 (codifying preference for reaching merits where violations of local or standing rules are "nonwillful" or occur without "actual notice of the requirement"); *United States v. Zingsheim*, 384 F.3d 867, 870 (7th Cir. 2004)

("Standing orders have much the status of local rules . . . ."). Plaintiffs' motion may not be denied for their alleged failure to comply with Magistrate Judge Schopler's chambers rules.

Second, while the Southern District of Indiana's Local Rules governs all proceedings in this Court, the Rules did not require Plaintiffs' counsel to contact the Court to speak with a magistrate judge prior to filing this miscellaneous matter. Local Rule 37-1 provides that before "involving the court in any discovery dispute . . . counsel must confer in a good faith attempt to resolve the dispute." S.D. Ind. L.R. 37-1(a). If this effort is unsuccessful, "counsel are encouraged to contact the chambers of the assigned Magistrate Judge to determine whether the Magistrate Judge is available to resolve the discovery dispute . . . ." *Id.* The problem for Plaintiffs, of course, was that there was no assigned magistrate judge to contact at the time of Mr. Medley's deposition. Similarly, Local Rule 30-1(c) provides that "[a] party may recess a deposition to submit an objection by phone to a judicial officer if the objection[] could cause the deposition to be terminated[] and can be resolved without submitting written materials to the court." As Plaintiffs explain, these particular Local Rules are not, by their own terms, mandatory. The Court agrees with the R&R's suggestion that parties to a deposition in this District may find it useful to proactively contact the Court for an informal conference prior to filing a miscellaneous matter, but Plaintiffs' failure to do so does not provide a procedural basis to deny their motions.

Finally, the Court respectfully rejects the R&R's characterization of Plaintiffs' motion as seeking to "dawdle on the minutiae of deposition preparation discussions" and conclusion that "the concept of proportionality strongly weighs in favor of denying Plaintiffs' motion." [Medley Filing No. 18 at 7-8.] To the contrary, Plaintiffs have proffered unrebutted evidence to show that the testimony of Mr. Medley (and Mr. Hegewald) may be central to the claims and defenses in this matter. Specifically, Scotts has not challenged Plaintiffs' assertion that the two deponents were

two of only three individuals terminated for their roles in the pesticide matter and that Scotts made much of its willingness to terminate these key players before the sentencing judge in its criminal matter. Nor does Plaintiffs' quest for impeachment or bias evidence appear to be a mere fishing expedition. To the contrary, Plaintiffs have already established that the deponents' counsel was sought and paid for by Scotts; that the deponents met with Scotts' counsel prior to the deposition; and that the deponents entered into a "common interest agreement" with Scotts. Combined with some of the testimony elicited during the depositions regarding refreshed recollections, Plaintiffs have demonstrated more than a mere possibility that the evidence sought could undermine the credibility of two key witnesses. Moreover, the burden of reconvening the depositions is minimized by Plaintiffs' agreement to a video deposition and the Court's ability to fashion limitations, such as time limitations, to accommodate the Nonparties. Should the Nonparties fail to establish their claims to privilege, the likelihood of eliciting evidence of bias deserves more serious consideration in the Rule 26(b)(1) proportionality analysis than it received in the R&R. The Court concludes that it is not in the best position to weigh these critical considerations in light of the entire litigation and, as set forth in the next section, leaves it to the Southern District of California to make this discretionary and fact-intensive assessment as appropriate.

Neither the R&R's procedural rulings nor its proportionality analysis supports the denial of either of Plaintiffs' motions to compel. The Court therefore **SUSTAINS** Plaintiffs' objections to the R&R, [Medley Filing No. 18], in Mr. Medley's matter.

### B. Transfer Under Rule 45(f)

Having concluded that neither of Plaintiffs' motions to compel may be denied on the grounds addressed in the R&R, the Court must next address whether this Court is the most appropriate forum for addressing the Nonmovants' privilege and proportionality arguments.

14

Plaintiffs argue that the Court should transfer the pending motions to the Southern District of California to ensure uniformity and to allow the court closest to the matter to make the important determinations at issue. [Medley Filing No. 3 at 20-23; Hegewald Filing No. 5 at 15-17.] In response, the Nonmovants argue that exceptional circumstances do not exist justifying a transfer and that transfer would impose an unnecessary burden on the nonparty deponents. [*E.g.*, Medley Filing No. 10 at 4-5; Hegewald Filing No. 10 at 31-33.]

Rule 45(f) provides that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion to the issuing court . . . if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). While Rule 45(f) reflects a general preference for "local resolution of disputes about subpoenas," the Advisory Committee's note recognizes that there are situations in which "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation." Fed. R. Civ. P. 45 advisory committee's note (2013 Amendment). The Advisory Committee provides as examples two such circumstances, "as when [the originating] court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* Other relevant considerations for transfer include "familiarity with the underlying action," which will not by itself usually warrant transfer, but "is a compelling factor in 'highly complex' cases where the issuing court is aware of 'the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation.'" *In re Niaspan Antitrust Litig.*, 2015 WL 3407543, at *1 (D. Md. 2015) (quoting *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014)). Several district courts have recognized that "judicial economy" and patterns of "highly contentious discovery" disputes may demonstrate exceptional circumstances warranting transfer. *Elliot v. Mission Trust Servs., LLC*, 2014 WL 7157156, at *3 (W.D. Tex. 2014) (citing *Chem-Aqua, Inc. v. Nalco Co.*, 2014 WL 2645999, at *1

(N.D. Tex. 2014)), *adopted*, 2015 WL 12734046 (2015). Ultimately, transfer is appropriate where the movants demonstrate that such justice- and efficiency-oriented concerns outweigh the burdens on the local nonparties, though the Advisory Committee anticipated that the transferee judge may minimize the burden on nonparties by permitting telephonic appearances as necessary. *See* Fed. R. Civ. P. 45 advisory committee's note (2013 Amendment).

In considering the foregoing, the Court concludes that Plaintiffs have the better of the argument. As explained above, the deponents were central figures in the events underlying this lawsuit. Their credibility may well play a critical role in resolving Plaintiffs' claims. Neither is likely to testify in person at trial, meaning that their depositions are Plaintiffs' only opportunity to explore any biases or flaws in their testimony. The Southern District of California, where the underlying case remains pending, should be the court to decide whether Plaintiffs are entitled to additional discovery on what transpired during the deponents' preparation with Scotts' counsel.

The Court is not persuaded that these motions may be resolved by the supposedly discrete issues of privilege raised by the Nonmovants. For one, counsel undoubtedly instructed both Mr. Medley and Mr. Hegewald not to answer questions seeking unprivileged material.[2] For example, at Mr. Medley's deposition, Scott's counsel instructed Mr. Medley not to answer questions concerning whose testimony he had reviewed during his preparation session. [Medley Filing No. 3-1 at 100-01.] But, as the Southern District of Florida observed in granting the *Morning Song* motion to compel before it, "[Scotts'] counsel has not articulated any specific evidence to suggest that Mr. [Medley's] disclosure of [which depositions] he reviewed at the pre-deposition meeting

---

[2] The Court makes these observations without reaching the issues of waiver or whether the common interest doctrine applies to extend the privileges to conversations between the deponents and Scotts' counsel. The Court leaves it to the Southern District of California to make this determination as it sees fit.

would reveal . . . . counsel's thoughts." 2017 WL 7512980, at *3 (S.D. Fla. 2017). Scotts' bald assertion that revealing which depositions were discussed "would reveal counsel's thoughts" likewise fails to meet the burden of demonstrating privilege in this case. [Medley Filing No. 9 at 17-18.] Even more problematic, Mr. Mansfield instructed Mr. Hegewald not to answer questions about whether his preparation impacted his memory or testimony. [Hegewald Filing No. 5-1 at 109-10.] This type of yes-or-no question clearly would not invade either claimed privilege, as the answer would reveal neither the substance of attorney-client communications nor counsel's thought processes or strategy.

But the possibility that these and other inquiries from the depositions could reveal both privileged and nonprivileged information dictate that the Southern District of California consider these motions in the first instance. Returning to the highly discretionary and fact-intensive proportionality analysis discussed above, that court may well decide that the properly-discoverable information withheld by the Nonparties is not worth the burden in reconvening their depositions. This Court may not decide this without expending considerable resources in familiarizing itself with the voluminous docket from the Southern District of California. Moreover, that court is extremely familiar both with the underlying case and the many discovery disputes that the assigned judicial officers have resolved since the complaint was filed in 2012, and should be able to swiftly undertake the privilege and proportionality analyses with the proper perspective in light of the entirety of the litigation. Having considered all of the relevant factors, including the complexity of this class action, the potentially great importance of the deponents' testimony, the fact-intensive

nature of the proportionality analysis, the extreme congestion of this Court's docket,[3] the Southern District of California's familiarity with this case, and the transferee court's ability to ease the burden on the nonparties by allowing for telephonic appearances, the Court concludes that Plaintiffs have established exceptional circumstances warranting transfer under Rule 45(f). The Court will therefore direct the Clerk to transfer this matter to the Southern District of California forthwith.

## IV.
### CONCLUSION

The Court concludes that special circumstances exist warranting transfer of Plaintiffs' motions to compel to the Southern District of California where the underlying litigation remains pending. The Court therefore **SUSTAINS** Plaintiffs' objections to the Magistrate Judge's R&R in 1:17-mc-00078-JMS-TAB and **GRANTS IN PART** Plaintiffs' motions in 1:17-mc-00078-JMS-TAB and 1:18-mc-00016-JMS-TAB. The Court directs the Clerk to **TRANSFER** both matters to the United States District Court for the Southern District of California for further proceedings.

Date: 4/25/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[3] The Southern District of Indiana is the second busiest district court in the country with 1,028 weighted filings per judgeship while the Southern District of California ranks fifteenth with 589 weighted filings per judgeship. United States Courts, *U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics*, (Dec. 31, 2017), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2017.pdf.